UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Crim. No.: 4:18-cr-00327-RBH-1 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Akiem Cooper, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Akiem Cooper's ("Cooper") [ECF No. 31] motion to suppress the firearm located on his person and any statements made by him subsequent to the search. A hearing on the motion was held on July 12, 2018. For the reasons stated below, the Court **DENIES** Cooper's motion to suppress.

**Factual and Procedural Background**

On June 15, 2017, the Horry County Police Department was attempting to locate Shawn Tisdale ("Tisdale"), who was wanted on charges for armed robbery, burglary 1st degree, and various weapons charges. Tisdale was known to be a member of a local gang known as the Ville Squad. On the morning of June 15, 2017, Horry County Police Department officers were monitoring a Facebook Live feed, which showed Tisdale, Kenneth Jackson ("Jackson"), and Defendant Cooper riding in a vehicle driven by Cooper.

Law enforcement watched the video in real time as Tisdale, Jackson, and Cooper drove to a local barbershop. During the Facebook Live video, Tisdale, Jackson, and Cooper can be seen singing along to rap music and making various hand gestures. The officers testified basically that they interpreted the conduct or actions of the three men during the video as being gang related conduct, consistent with gang activity, and gang related displays or signs. The defense argued that

the actions displayed in the video could be interpreted otherwise, such as music. Jackson and Tisdale are seen smoking what appears to be marijuana while Cooper drives.

Once Tisdale, Jackson, and Cooper arrived at the barbershop, they stand outside the barbershop for several minutes. While outside the barbershop, Jackson continues to talk to the camera. At one point, Cooper proclaims that he is "up with the roosters" and "I go down with my shooters." Jackson states that "everybody over here, we eating, slinging, working, whatever, robbing . . .we good." Cooper and Tisdale then appear to make the Ville Squad hand sign endorsing what Jackson just said.

Law enforcement was able to determine the location of the barbershop through the Facebook Live video, which showed the address of the barbershop. Law enforcement proceeded to the barbershop to arrest Tisdale pursuant to his outstanding warrants. When officers arrived at the barbershop, Jackson, who was standing outside, immediately fled from the police as soon as he saw them. Law enforcement did not pursue Jackson because of his head start.

Officers entered the barbershop where they found Tisdale and Cooper. Tisdale was sitting in the barber's chair and was arrested without incident. Cooper was sitting in a chair by the window. Officers recognized Cooper from the Facebook Live video and attempted to conduct a pat down of him for officer safety and the safety of the other patrons of the barbershop.

Cooper resisted law enforcement's attempts to frisk him and appeared to be guarding his waistline. Cooper claimed he was just getting a haircut, denied having any weapons, and offered his identification. Cooper did not consent to a pat down. Because of Cooper's resistance to be frisked, law enforcement secured Cooper in handcuffs. While in handcuffs, officers are heard on the video asking Cooper what he was going after or reaching for. At that point, officers discovered a loaded

2

firearm in Cooper's underwear. Cooper was then placed under arrest.

On or about March 27, 2018, Cooper was indicted in a one count indictment for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On May 3, 2018, Cooper filed the pending motion to suppress the firearm and any statements made after the firearm was discovered.

## **Analysis**

Cooper argues that law enforcement did not have particularized suspicion to seize him other than his mere association with Tisdale and Jackson. Cooper argues "mere association" is not sufficiently particularized and objective to justify his seizure under the prevailing constitutional standards.

This case, however, also implicates a rule known as the "automatic companion" rule. John J. O'Shea, *Automatic Companion Rule: A Bright Line Standard for the Terry Frisk of an Arrestee's Companion*, 62 Notre Dame L. Rev. 751 (1987). The rule provides that "all companions of the arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to a cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *United States v. Poms*, 484 F.2d 919, 922 (4th Cir. 1973) (citing *United States v. Borehole*, 445 F.2d 1189, 1193 (9th Cir. 1971)); *United States v. Williams*, 215 F.3d 1323, 2000 WL 718395, at *7 (4th Cir. June 5, 2000) (unpublished); *United States v. Hicks*, 121 F.3d 701, 1997 WL 540910, at *2 (4th Cir. Sept. 4, 1997) (unpublished) (stating "[i]n *United States v. Poms*, we adopted the principle that officers may conduct a limited search for weapons of a known companion of an arrestee who is within the vicinity of the arrest").[1]

Officers had an arrest warrant for Tisdale for armed robbery, burglary 1st degree, and

---

[1] Neither party submitted legal authority regarding the "automatic companion" rule.

weapons charges. From the Facebook Live video, officers were able to determine Tisdale's location and that Cooper, Jackson, and Tisdale were companions. Cooper was in the immediate vicinity of Tisdale during Tisdale's arrest and could have accomplished a harmful assault on the arresting officers. Jackson fled on foot immediately when officers arrived. When law enforcement entered the barbershop to effect Tisdale's arrest and recognized Cooper as Tisdale's companion from the Facebook Live video, they were justified in conducting a limited search of Cooper for weapons to ensure officer safety. *See Poms*, 484 F.2d at 922. The officers credibly testified that they conducted a pat-down for officer safety and public safety. Regardless of one's interpretation of the conduct on the Facebook Live video (gang related or not gang related), the pat down of Cooper was proper for officer safety and public safety purposes.

Also, distinct from the application of the "automatic companion" rule, the temporary seizure and frisk of Cooper was proper under *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry v. Ohio*, an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot. *See Illinois v. Wardlow*, 528 U.S. 119, 123; *United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir.1989). "Courts assess reasonable suspicion by examining the totality of the circumstances in order to determine whether officers had a 'particularized and objective basis for suspecting the person stopped of criminal activity.'" *United States v. Hernandez-Mendez*, 626 F.3d 203, 207-08 (4th Cir. 2010).

Here, officers had a particularized and objective basis creating reasonable suspicion that Cooper may be involved in criminal activity. The officers credibly testified they believed the displays on the video were gang related. As soon as law enforcement arrived at the barbershop, one of Cooper's companions, Jackson, took off in head-long flight. *See, e.g. Illinois v. Wardlow*, 528

4

U.S. 119, 124 (2000) (recognizing that "headlong flight - wherever it occurs - is the consummate act of evasion" and can create reasonable suspicion). Jackson was known by law enforcement to be involved in gang, robbery, and narcotics activities. Tisdale had outstanding warrants for several violent crimes including armed robbery, burglary 1st degree, and weapons charges. Cooper was Jackson and Tisdale's companion. These facts, which were known to law enforcement when they entered the barbershop, were sufficient to establish reasonable suspicion that Cooper may be involved in criminal activity. Based on the totality of the circumstances, law enforcement officers' temporary detention and frisk of Cooper was constitutional under the principles set forth in *Terry*.

For those reasons, Cooper's motion to suppress is due to be denied.

## Conclusion

For the reasons stated above, Defendant Akiem Cooper's [ECF No. 31] motion to suppress is **DENIED**.

IT IS SO ORDERED.

July 18, 2018  
Florence, South Carolina

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge